UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MATTHEW PIDGEON,

        Petitioner,         Case No. 2:23-cv-10130

v.        Hon. Brandy R. McMillion
        United States District Judge

CHRIS KING,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS (ECF NO. 1), DECLINING
TO ISSUE CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner James Matthew Pidgeon ("Pidgeon," "Defendant," or "Petitioner"), a Michigan prisoner incarcerated at the Saginaw Correctional Facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Pidgeon, proceeding *pro se*, challenges his convictions for first degree premeditated murder, MICH. COMP. LAWS § 750.316, assault with intent to murder, MICH. COMP. LAWS § 750.83, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, third offense, MICH. COMP. LAWS § 750.227b. *See generally* ECF No. 1. For the reasons explained below, the Court **DENIES** the petition and declines to issue a certificate of appealability.

# I.

In short, Pidgeon's convictions arise from the shooting death of Joseph A. Stailey ("Victim") in Dearborn Heights, Michigan. The following facts, as recited by the Michigan Court of Appeals, are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> In June 2007, Defendant was at a bar with his girlfriend at the time, Adelita Sullivan. While at the bar, Mark White, who was highly intoxicated, approached Defendant and Sullivan. An altercation arose between Defendant and White, resulting in the bouncer, Aaron Scott, escorting Defendant and White out of the bar. White left the bar and walked across the street to a gas station. Defendant and Sullivan left the bar in their vehicle and also went to the gas station. While at the gas station, White asked the Victim for a ride home in the Victim's vehicle, and the Victim agreed. At the same time that White and Victim left the gas station, Defendant and Sullivan also left the gas station. As White and Victim were driving, a vehicle drove up next to Victim's vehicle and fired a single shot into the vehicle, striking Victim in the head and killing him instantly. Due to White's extreme intoxication on the night of the incident, he gave police various accounts of the incident, including an initial description of the shooter as a "young black male" driving a white Cadillac. On the basis of White's initial description, the police investigated Brian Howard, who possessed a vehicle matching the description. However, nothing of evidentiary value was found in Howard's vehicle and he was eliminated as a suspect. Because the police could not find any leads based on White's inconsistent accounts of the incident, the case went cold for several years.
>
> In February 2015, two police informants came forward with information about the incident. From the information, Dearborn Heights Police Sergeant Patrick Mueller contacted Defendant's ex-girlfriend, Tawna Lopez, who told Sergeant Mueller that Defendant was in a relationship with Sullivan at the time of the incident. Sergeant Mueller interviewed Sullivan three times, and each time Sullivan revealed more details about the incident, including that Defendant shot

a gun out of their vehicle on the way home from the bar on the night of the incident, but she did not know if any of the bullets hit anything.

*People v. Pidgeon*, No. 346506, 2021 WL 1049940, at *1 (Mich. Ct. App. Mar. 18, 2021) (cleaned up).

Pidgeon was convicted by a jury in Wayne County Circuit Court ("Trial Court") and, on October 9, 2018, sentenced to life without the possibility of parole for first-degree murder, life with the possibility of parole for assault with intent to murder, 2 to 5 years for carrying a concealed weapon and for being a felon in possession of a firearm, the foregoing to be served consecutive to 10 years for felony firearm, third offense. ECF No. 1, PageID.1-2.

Approximately eight months after sentencing, Pidgeon filed a motion for an evidentiary hearing based on ineffective assistance of counsel. The Trial Court held a *Ginther* hearing. *See People v. Ginther*, 212 N.W.2d 922 (1973). Pidgeon, trial counsel—Daniel Rust ("Counsel"), and Sergeant Patrick Mueller ("Mueller") testified at the hearing. *See generally* ECF No. 7-20; ECF No. 7-21. The Trial Court held that counsel was not ineffective and denied Plaintiff's motion for a new trial. *See* ECF No. 7-21, PageID.1061-1062.

Pidgeon appealed to the Michigan Court of Appeals, arguing that he received ineffective assistance of trial counsel. The Michigan Court of Appeals affirmed Pidgeon's convictions. *Pidgeon*, 2021 WL 1049940, at *6. Pidgeon filed an application for leave to appeal in the Michigan Supreme Court. The Michigan

Supreme Court denied the application. *People v. Pidgeon*, 965 N.W.2d 533, 533-34 (Mich. 2021).

Pidgeon now seeks a writ of habeas corpus. ECF No. 1. This case was originally assigned to the Honorable Bernard A Friedman, then reassigned to the Honorable Paul D. Boreman, and finally reassigned to the undersigned. *See Administrative Order* 24-AO-009; *Administrative Order* 24-AO-018. Pidgeon requests this Court find his conviction and sentence in violation of his federal constitutional rights. ECF No. 1, PageID.28.

## II.

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Jackson v. Cool*, 111 F.4th 689, 695 (6th Cir. 2024). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 578 U.S. 113, 116-17 (2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). *Pro se* habeas corpus pleadings are held to less stringent standards than formal pleadings drafted by lawyers and must be liberally construed. *See Urbina v. Thomas*, 270 F.3d 292, 295 (6th Cir. 2001). Nonetheless, the petitioner must prove his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### III.

Pidgeon raises a single claim based on a variety of arguments, with subtle nuances to each: that in one way or another, his counsel was ineffective in his assistance of Pigeon's defense. ECF No. 1, PageID.2. As a result, Pidgeon seeks to overturn his conviction for: (1) failing to conduct an adequate investigation; (2) neglecting to present exculpatory or impeachment evidence; (3) failing to explore suggestive comments police made to witnesses to influence their recollection of

events (*i.e.*, failure to investigate); (4) failing to call an expert witness to testify about Sergeant Mueller's improper interrogation techniques; (5) failing to admit DVD footage of Sullivan's police interview to show how she was manipulated by police to implicate him (*i.e.*, poor trial performance); (6) failing to communicate with him or to provide him with discovery materials; (7) failure to communicate with him which prejudiced his ability to thoughtfully evaluate a plea offer. ECF No. 1, PageID.25-27. The Court will address each argument in turn.

A.  INEFFECTIVE ASSISTANCE OF COUNSEL

To establish an ineffective assistance of counsel claim "a defendant must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 121 (2011). Generally, an attorney is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement." *Stickland v. Washington*, 466 U.S. 668, 690 (1984). But if a challenger insists, an attorney's deficient performance must be proven by showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Meaning, the challenger must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, based on "a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding

would have been different." *Id.* at 694; *see also Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015).

Under AEDPA, a double layer of deference applies to ineffective-assistance claims: the petitioner must overcome the *Strickland* presumption that his attorney's performance was adequate, ***and*** he must demonstrate that the state court's application of *Strickland* was unreasonable. *Kelly v. Lazaroff*, 846 F.3d 819, 831-32 (6th Cir. 2017).

1.  **Failure to Investigate**

First, Pidgeon argues that defense counsel was ineffective for failing to conduct an adequate investigation and for neglecting to present exculpatory or impeachment evidence. ECF No. 1, PageID.28. He faults counsel for not investigating or interviewing Brian Howard ("Howard"), who was initially a suspect because his car matched a description of the shooter's vehicle. ECF No. 1, PageID.25. According to Pidgeon, Howard told police that someone in a nearby neighborhood owned a nearly identical car. *Id.* Pidgeon asserts that it is unclear whether police ever located that vehicle or its owner, and that counsel should have pursued this lead.The Court disagrees. Despite his protest, Pidgeon fails to identify any exculpatory or otherwise useful information that such an investigation would have uncovered. He failed to offer a persuasive reason why counsel should have investigated someone whom police had already excluded. *Pidgeon*, 2021 WL

8

1049940 at *2. And while failures to investigate or inquire can point to deficient performance, *see Smith v. Jenkins*, 609 F. App'x 285, 292 (6th Cir. 2015), a speculative argument that counsel should have done more with no supporting evidence or offer of proof is insufficient to warrant habeas relief. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("[C]onclusory and perfunctory . . . claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief."). The Michigan Court of Appeals was also unpersuaded by Pidgeon's argument that counsel should have done more to present exculpatory evidence such as the white Cadillac, the initial description of the suspect by White, the inconsistencies between Sullivan's and White's testimony, and Scott's statement to police on the night of the shooting. The Michigan Court of Appeals held:

> [I]nformation about the white Cadillac, Howard, and White's initial description of the suspect were all placed before the jury. Defendant also places much emphasis on White's statements in contrast to Sullivan's and on interviews that White gave in 2007 and 2015 in which he claimed that the perpetrator was black. What arguments to make and what evidence to place before the jury are generally matters of trial strategy. *People v. Russell*, 297 Mich. App. 707, 716, 76; 825 N.W.2d 623 (2012). At the Ginther hearing, defendant's trial counsel explained that White admitted that he was highly intoxicated on the night of the shooting and that he could have been mistaken about certain aspects of his descriptions of the shooting and the shooter, and further explained that his chosen trial strategy was to discredit Sullivan. That is, rather than emphasizing statements made by White, whose credibility was clearly in question, defendant's trial counsel instead focused on raising questions about Sullivan's credibility and encouraged the jury to

discount her testimony. Defendant has not overcome the strong presumption that this was sound trial strategy...

Finally, defendant contends further emphasis should have been placed on Scott's statement contained in the police report from the night of the incident because it established that defendant did not follow White to the gas station. Defendant correctly points out that, in the police report, Scott told police that he watched defendant pull away in a purple economy car with his girlfriend on "WB Van Born towards Beech Daly." However, at trial, Scott testified that after defendant was removed from the bar, he thought Sullivan and defendant left in their vehicle driving away from the bar, but they did not, they waited for White. Scott further testified that he watched Sullivan and defendant follow White to the gas station and then pull out of the gas station behind the vehicle White was in, towards Beech Daly. At the Ginther hearing, when asked why he did not highlight this discrepancy at trial, defendant's trial counsel stated:

> [Defendant] followed [White] over to a nearby gas station, which was on video, and the video showed him, as I indicated, following that person and then leaving in that maroon car.

We conclude that it was not objectively unreasonable for defendant's trial counsel to not impeach Scott when video evidence established that Scott's initial statement to the police was incorrect. Moreover, even if it was objectively unreasonable for trial counsel to not impeach Scott, we cannot conclude that the result of defendant's trial would have been any different in light of the video evidence contradicting Scott's initial statement to the police.

*Pidgeon*, 2021 WL 1049940, at *4.

Pidgeon contends counsel's approach was lacking, but the question is not "whether counsel's actions were reasonable." *Harrington*, 562 U.S. at 105. The critical question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard[.]" *Id.* Pidgeon has not overcome the deference

10

owed to both trial counsel's strategic decisions and the state court's adjudication of his claims. Accordingly, he is not entitled to habeas relief for this claim.

### 2. Poor Trial Performance

Next, Pidgeon argues that defense counsel was ineffective for failing to explore suggestive comments police made to witnesses to influence their recollection of events, failing to call an expert witness to testify about Sergeant Mueller's improper interrogation techniques, and failing to admit DVD footage of Sullivan's police interview to show how she was manipulated by police to implicate him. *See* ECF No 1, PageID.26. The Court disagrees.

"No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011); *see also Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004) (upholding as reasonable the Michigan Court of Appeals' conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).

The Michigan Court of Appeals held that counsel was not deficient and that, even if it was, Pidgeon failed to show prejudice. *Pidgeon*, 2021 WL 1049940, at *6. The state court outlined detailed counsel's reasonable explanations for not calling certain witness. *Id.* at *5. The court also rejected Pidgeon's argument that counsel should have sought to admit the recording of Sullivan's police interviews rather than relying solely on cross-examination. *Id.* The court held that Pidgeon failed to overcome the presumption that counsel's decision was a reasonable strategic choice, noting that portions of the recording were unfavorable to the defense. *Id.* The trial court even characterized the four-minute excerpt played at the *Ginther* hearing as "very dam[n]ing to defendant." *Id.* Given that context, it was reasonable for defense counsel to focus on impeaching Sullivan's credibility through cross-examination by highlighting her inconsistent statements and suggesting possible police influence. *Id.*

Counsel weighed the benefits and risks of different approaches in determining it was more favorable to elicit certain evidence through cross-examination rather than by introducing the DVDs. ECF No. 7-20, PageID.972-973, 980. Where, as here, the challenged conduct reflects a reasoned trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012). Additionally, Pidgeon has not shown prejudice.

12

Therefore, the Court is convinced counsel advanced a coherent defense theory through cross-examination and closing argument. Pidgeon has not shown a reasonable probability that the outcome at trial would have been different had counsel formulated a different strategy. Accordingly, the Michigan Court of Appeals' denial of this claim was neither contrary to nor an unreasonable application of *Strickland*.

### 3.     Failure to provide Discovery Materials

As for Pidgeon's argument that counsel was ineffective for failing to communicate with him or to provide him with discovery materials, the Court find this argument insufficient to warrant habeas relief with no supporting evidence or offer of proof. *See Wogenstahl*, 668 F.3d at 335-36. Defense counsel testified at the *Ginther* hearing that he met with Pidgeon "many" times before trial and shared discovery materials with him. ECF No. 7-20, PageID.985. Pidgeon admitted that counsel shared discovery with him and viewed DVDs with him. *Id.* at 991-92.

In concluding that defense counsel was not ineffective, the trial court clearly credited counsel's version of events. *See* ECF No. 7-21, PageID.1061-1062. The Michigan Court of Appeals noted that "defendant demonstrated his in-depth knowledge about his case, the individuals involved, each witness's statement, and the overall sequence of events . . . . suggest[ing] that he was quite involved in his case from its inception, and has not been deprived of information by trial counsel."

13

*Pidgeon*, 2021 WL 104990 at *3. Therefore, Pidgeon fails to show that the state court's decision was contrary to, or an unreasonable application of, *Strickland*.

### 4. Plea Offer

To the extent that Pidgeon also argues that defense counsel's alleged failure to communicate prejudiced his ability to thoughtfully evaluate a plea offer, this claim is unexhausted. On federal habeas review, a district court may decide an unexhausted claim if it is "plainly meritless." *Rhines v. Weber*, 544 U.S. 267, 277 (2005). The Court exercises its discretion to bypass the exhaustion question and proceeds directly to the merits of this claim.

Pidgeon claims that he might have "[t]ake[n] the five-year plea offer ... had [he] been informed of the evidence against him, and counsel's 'strategy', he may have found it in his best interest to minimize his exposure to life imprisonment while gathering the materials with w[h]ich to appeal." ECF No. 1, PageID.39. The Sixth Amendment right to counsel extends to the plea-bargaining process, and a criminal defendant is "'entitled to the effective assistance of competent counsel'" during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

To establish prejudice in the context of a rejected plea offer, a defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that the defendant would have accepted the plea agreement, and the prosecution

would not have withdrawn it considering intervening circumstances. *Id.* at 164. The defendant also must show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.*

The record shows that the prosecutor's "last best offer" was that if Pidgeon pleaded guilty to second-degree murder and felony firearm, third offense, the prosecutor would agree to a sentence of 5 to 20 years for the murder conviction, to be served consecutive to 10 years for the third offense, felony firearm conviction, for a cumulative sentence of 15 to 30 years. ECF No. 7-13, PageID.404-405. After Pidgeon declined the offer, the trial court carefully discussed with Pidgeon the risks of proceeding to trial. *Id.* at PageID.404-409. The court said there was "a fair amount of evidence" incriminating Pidgeon but Pidgeon insisted that he believe his changes of acquittal were greater than "what everybody else thinks." *Id.* at 407. Pidgeon stated that he understood he faced life in prison if convicted as charged. *Id.* at PageID.406-407.

As this Court finds, Pidgeon fails to identify any specific information his attorney withheld which would have swayed his decision. Even if counsel misjudged the likelihood of acquittal, that does not, by itself, amount to deficient performance. *See Lafler*, 566 U.S. at 174 ("an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). In short, nothing

15

in the record supports a claim that counsel performed deficiently and that, as a result, Pidgeon rejected the plea offer.

**B.     CERTIFICATE OF APPEALABILITY**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

**IV.**

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

*This is a final order that closes the case.*

**IT IS SO ORDERED.**

Date: December 19, 2025  
Detroit, Michigan

s/Brandy R. McMillion  
HON. BRANDY R. MCMILLION  
United States District Judge